**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>1750 H Street, N.W.,<br>Washington, D.C. 20006<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY UNITED STATES CUSTOMS & BORDER PROTECTION FREEDOM OF INFORMATION OFFICE<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229<br><br>Defendant. | ) | Civil Action No. 06-1812 (JR) |

**DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant United States Department of Homeland Security (DHS), United States Customs and Border Protection (CBP), by and through undersigned counsel, respectfully moves this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing Plaintiff's claims in this Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), case. Fed. R. Civ. P. 12(b)(1), (b)(6). In the alternative, Defendant moves the Court pursuant to Rule 56 for summary judgment on the grounds that there are no material facts in dispute and that Defendant is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56. In support of this motion, Defendant submits the declaration of Diane S. Shepherd, Director of Employee Relations Policy, Labor and Employee Relations Division, Office of Human Resources Management, CBP, and the

accompanying exhibits.[1] Defendant also submits the attached memorandum of points and authorities, statement of material facts not in dispute, and proposed order.

Dated: May 4, 2007

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7220

[1] Attached as Exhibit 1.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, N.W.,
Washington, D.C. 20006

Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY UNITED STATES CUSTOMS & BORDER PROTECTION FREEDOM OF INFORMATION OFFICE
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229

Defendant.

Civil Action No. 06-1812 (JR)

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE ISSUE**

Pursuant to LCvR 7(h), Defendant respectfully submits this statement of material facts as to which there is no genuine dispute. The attached declaration of Diane S. Shepherd, CBP, supports this statement. See Exh. 1 (hereinafter cited as "Decl.").

1. By letter dated January 27, 2006, Plaintiff NTEU requested from CBP four categories or "items" of information pertaining to fiscal year 2005. See Compl. ¶ 5; Decl. ¶ 3 and Exhibit A. The requests were for:

> (1) All award nomination forms and resulting award documentation, e.g. award recipients and amounts, broken down by port, for employees represented by NTEU. Such awards include performance-based cash awards, special act and on-the-spot awards, honorary and nontraditional awards, quality step increases (QSIs) and time-off awards. This request applies to awards given in or for FY 2005 performance, and we would like the information collated by employee.
>
> (2) Information which would show the total annual FY 2004 and separately 2005 salary for CBP nonsupervisory employees who are either in the various bargaining units or in the unit being petitioned for versus the CBP supervisory and managerial

> employees in those same areas for each of those two years. Additionally, we want the total amount of award money given to each of those two groups for each of those two years by type of award, e.g., spot award, QSI, sustained superior performance, special act, etc. Where possible we would like the above data sorted by current bargaining unit, e.g., NTEU, AFGE, NAAE, unit status pending, etc.
>
> (3) Information which would show CBP's distribution of all performance-based incentive awards and QSIs with regard to race, sex, gender, age, national origin, and disability for all CBP employees. The data would only cover FY 2005, and it would be broken out by unit versus nonunit categories as described in #2 above.
>
> (4) Any analyses done of the awards program for FY 2005 or even segments of it.

Id.

2. CBP's Employee Relations Policy Division within Labor and Employee Relations (LER), Office of Human Resources Management (HRM), is responsible for the implementation of the Agency's awards and recognition program, and thus NTEU's letter was forwarded to that office. Decl. ¶¶ 1, 4. Additionally, the Personnel Systems Group within HRM compiled information related to item 2 of NTEU's request from the Personnel Action History database maintained by the U.S. Department of Agriculture, the organization who processes all personnel actions for CBP. Within CBP, HRM is the sole repository of these types of records. If any of the requested records exist, they would be available in this division. Decl. ¶¶ 4, 5.

3. On March 15, 2007, CBP responded to NTEU's request. Decl., Exhibit B. CBP provided NTEU with 4 pages in response to items (2) and (4): CBP Fiscal Year 2004 and 2005 Awards Distribution Comparison, and Customs and Border Protection Full-Time Permanent Only Salary for Supervisors and Non Supervisors by Fiscal Year. In responding to items (2) and (4) in Plaintiff's request, Defendant exhausted approximately five hours of search and review time. No information was redacted, and the documents were provided at no charge. See Shepherd Decl. ¶¶ 6,

14, 16, and Exh. B.

4. On March 30, 2007, Plaintiff's counsel confirmed that Defendant's response to items (2) and (4) was sufficient. See Exhibit 2, Email from Plaintiff's counsel to Defendant's counsel.

5. The March 15, 2007 letter informed NTEU that the agency does not create or maintain documents that would provide information responsive to item (3) of Plaintiff's request. See Exhibit B. Additionally, the letter stated that there may be documents responsive to item (1) in the Agency's control. A search, however, would require work in hundreds of offices throughout the nation. Therefore, CBP requested that if NTEU wanted to proceed with the search, it must provide a written agreement to pay such processing costs as may become associated with its request, or detailing the maximum amount of fees you are willing to pay, as per 19 Code of Federal Regulations 103.10. CBP also informed Plaintiff that it could reformulate its request in item (1) in order to narrow the scope of the proposed search and therefore limit costs. Similarly, if Plaintiff chose to pursue this course, this Office required a written agreement detailing the maximum amount of fees Plaintiff was willing to pay. See Decl. ¶ 7, Exhibit B.

6. The agency further informed NTEU that even if it agreed to pay additional search fees, the agency anticipated that any discovered records would likely be withheld or significantly redacted because their release would likely threaten the privacy and safety of CBP employees, and the security of CBP operations. See Decl. ¶ 8.

7. The agency denied NTEU's request for a waiver of all costs. See Decl. ¶ 9, Exhibit B. The agency considered whether (1) the subject of the requested records concerns the operations or activities of the United States government; (2) disclosure is likely to contribute to an understanding of these operations or activities; (3) disclosure will contribute to the understanding of

the public at large; and (4) disclosure is likely to contribute significantly to the public understanding of government operations or activities. Based upon NTEU's request, the agency determined that NTEU failed to provide reasonable specificity as to how the information sought would contribute significantly to the public understanding of the operations or activities of the government. See id.

8. Upon further litigation review, the agency determined that it controlled additional documents responsive to item (3) of NTEU's request. Decl. ¶ 10. The agency discovered that its EEO office was in possession of documents that had been prepared in compliance with Equal Employment Opportunity Commission reporting rules, and were largely responsive to Plaintiff's request. Id.

9. On April 2, 2007, CBP sent NTEU an addendum to its March 15 response. See Decl. ¶ 11 and Exhibit C. With that letter, CBP provided two additional documents: Tables A13 and B13 from the Agency's fiscal year 2005 report to the EEOC under Management Directive 715. No information was redacted, and the documents were provided at no charge. See Exhibit C. The letter further stated that there may be additional information in the agency's control that is responsive to item (3) of its request. However, again, because the agency estimated that search and processing fees for this potentially responsive information would exceed the $100 fee authorization in NTEU's original request, CBP requested that NTEU provide a written agreement to pay such processing costs as may become associated with its request, or that NTEU inform CBP as to the maximum amount of fees it was willing to pay, as per 19 Code of Federal Regulations 103.10. Alternatively, CBP again informed NTEU that it could reformulate its request in item (3) in order to narrow the scope of the proposed search and therefore limit costs. See Exhibit C.

10. Although CBP twice notified NTEU that any additional records searches for NTEU's

Requests in item (1) and (3) would require a written agreement to pay search fees related to its requests, to date, NTEU has not provided any such agreement, nor has it indicated an intention to do so.  Decl. ¶ 12.  Neither has NTEU indicated that it wishes to narrow the scope of its requests in order to reduce associated costs.  Id.  Therefore, CBP considers NTEU's request resolved.  Id.


Dated: May 4, 2007                          Respectfully submitted,


                                            /s/
                                            JEFFREY A. TAYLOR, D.C. BAR # 498610
                                            United States Attorney

                                            /s/
                                            RUDOLPH CONTRERAS, D.C. BAR # 434122
                                            Assistant United States Attorney

                                            /s/
                                            MEGAN L. ROSE, N.C. Bar # 28639
                                            Assistant United States Attorney
                                            555 4th St., N.W.
                                            Washington, D.C. 20530
                                            (202) 514-7220

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>1750 H Street, N.W.,<br>Washington, D.C. 20006<br><br>Plaintiff,<br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY UNITED STATES CUSTOMS & BORDER PROTECTION FREEDOM OF INFORMATION OFFICE<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229<br><br>Defendant. | ) | Civil Action No. 06-1812 (JR) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant United States Department of Homeland Security (DHS), United States Customs and Border Protection (CBP), through the undersigned counsel, respectfully moves this Court for dismissal of this matter pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment under Fed. R. Civ. P. 56(c).

Plaintiff brought this civil action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, with regard to the processing of Plaintiff's FOIA requests by CBP. As demonstrated by the attached declaration of Diane S. Shepherd, Director of Employee Relations Policy, Labor and Employee Relations Division, Office of Human Resources Management, CBP, Defendant conducted reasonable searches and no documents have been improperly withheld from Plaintiff. Plaintiff has failed to respond to Defendant's requests for an agreement to pay fees before conducting additional searches, nor has Plaintiff narrowed the scope of certain of its requests. Thus,

there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  For the reasons set forth below, summary judgment for Defendant should be granted.

## BACKGROUND

Defendant adopts the above Statement of Material Facts Not In Genuine Dispute.

## STANDARD OF REVIEW

### I.    Summary Judgment (Fed.R.Civ.P. 56)

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is required when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the nonmoving party through affidavits or other documentary evidence.  Fed. R. Civ. P. 56(e).

While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." High Tech Gays v. Defense Industrial Security Clearance Office, 895 F.2d 563, 574, reh'g denied, 909 F.2d 375 (9th Cir. 1990) (citing Celotex v. Catrett, 477 U.S. 317, 331 (1986)).

**II. Summary Judgment In FOIA Cases**

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, United States Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).[1] To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. Weisberg v. United States Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency which show that the documents are exempt from disclosure. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. United States Department of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be granted solely on the basis of agency affidavits [or declarations] if they "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish that the documents are within the FOIA exemption category; the district court need look no further." Citizens Commission on Human Rights v. FDA, 45 F.3d 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991). See also Hayden, supra, 608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). When the pleadings, supplemented by the affidavits and declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should

---

[1] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

be granted to the defendant. See Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

In this case, Defendant's declaration was prepared by Diane S. Shepherd, Director of Employee Relations Policy, Labor and Employee Relations Division, Office of Human Resources Management, CBP, who is familiar with the subject of Plaintiff's FOIA request, the CBP awards and recognition program, and familiar with the procedures followed by the agency in responding to requests for information under the FOIA. See generally Shepherd Decl. Ms. Shepherd is also specifically familiar with the processing of Plaintiff's FOIA request. Id.

**ARGUMENT**

A plaintiff in a FOIA case must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'" United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)); see 5 U.S.C. § 552(a)(4)(B). In this case, Plaintiff has failed to show that Defendant improperly withheld agency records. See United States Dep't of Justice v. Tax Analysts, 492 U.S. at 142. Because Defendant conducted reasonable searches and properly responded to Plaintiff's request, Defendant is entitled to judgment as a matter of law.

**I. Defendant Adequately Responded to Items 2 and 4 in Plaintiff's Request.**

In a FOIA action, a plaintiff states a claim only when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). "[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'" See Trueblood v. United States Dep't of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996)(citation omitted).

In this case, on March 15, 2007, Defendant responded to Plaintiff's FOIA request. See

Shepherd Decl. ¶ 6, Exhibit B. After approximately five hours of searching for and reviewing responsive documents, Defendant provided Plaintiff with 4 pages in response to items (2) and (4): CBP Fiscal Year 2004 and 2005 Awards Distribution Comparison, and Customs and Border Protection Full-Time Permanent Only Salary for Supervisors and Non Supervisors by Fiscal Year. Id. On March 30, 2007, Plaintiff's counsel confirmed that Defendant's response to items (2) and (4) was sufficient. See Exhibit 2, Email from Plaintiff's counsel to Defendant's counsel. Accordingly, because Defendant adequately produced responsive documents as to these items, the substance of the controversy as to items (2) and (4) disappeared and is now moot. See Trueblood, 943 F. Supp. at 67.

**II. Defendant Has Not Improperly Withheld Any Other Responsive Records.**

With regard to items (1) and (3) of Plaintiff's request, Defendant conducted an adequate search for responsive records and properly responded to Plaintiff's requests. Defendant produced certain information in response to item (3), and properly requested that prior to conducting any additional searches Plaintiff notify Defendant in writing whether it would agree to pay the costs associated with additional searches or whether it would like to narrow the scope of its request. Because Plaintiff has not responded to Defendant's requests, Defendant has satisfied its burden under the FOIA and the case should be dismissed.

**A. Defendant Conducted an Adequate Search Under the FOIA.**

The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records. Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993). The search standards under the FOIA do not place upon the agency a requirement that it prove that all

responsive documents have been located. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" Miller v. Department of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973). An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of

responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352. Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Department of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs. v. SEC, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through convincing evidence, then the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney, 19 F.3d at 813; SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

In this case, as shown by the declaration of Diane Shepherd, Defendant met its burden and established that it made a good faith effort to conduct an adequate search for requested records. See Shepherd Decl. In responding to items (2) and (4) in Plaintiff's request, Defendant exhausted approximately five hours of search and review time and sufficiently responded to Plaintiff's request. See Shepherd Decl. ¶ 6; see also Exh. 2. However, Defendant determined that in order to respond to item (1) of Plaintiff's request, Defendant would need to search over 300 ports and 20 Director of Field Operations offices. See Decl. ¶ 7 and Exh. B. Thus, on March 15, 2007, Defendant requested that prior to beginning such a search, Plaintiff notify Defendant in writing whether it agreed to pay the costs associated with such a broad search, or whether it would like to narrow the scope of its request. See id.; see also 19 C.F.R. § 103.10(e).[2] To date, Plaintiff has not responded. Decl. ¶¶ 12,

---

[2] Defendant's March 15, 2007 letter cited an incorrect fee waiver provision. The applicable DHS regulation can be found at 19 C.F.R. § 103.10.

17.

Despite Defendant's original determination that it maintained no documents responsive to item (3) in Plaintiff's request, upon litigation review, Defendant discovered that much of the requested data may be in the control of the agency. Decl. ¶¶ 10-11, Exh. C. Defendant searched its EEO Office, which had previously prepared an EEOC report largely responsive to item (3). Decl. ¶ 10. On April 2, 2007, Defendant released to Plaintiff two documents, Tables A13 and B13 from the Agency's fiscal year 2005 report to the EEOC under Management Directive 715. See Decl. ¶ 10, Exhibit C. No information was redacted, and Defendant provided the documents at no charge. See Decl. ¶¶ 11, 15, Exhibit C. However, because Defendant determined that any additional searching and processing would exceed the $100 fee authorization in Plaintiff's original request, Defendant again requested that prior to any additional searches Plaintiff provide a written agreement to pay such processing costs as may become associated its request, or that Plaintiff inform Defendant as to the maximum amount of fees it was willing to pay, as per 19 C.F.R. § 103.10(e). Id. Alternatively, Defendant informed Plaintiff that it could reformulate its request in item (3) in order to narrow the scope of the proposed search and therefore limit costs. Id. To date, Plaintiff has not responded. Decl. ¶¶ 12, 17.

Because Defendant has acted in good faith and met its obligations under the FOIA, Plaintiff's claims should be dismissed.

**B. Defendant Properly Denied Plaintiff's Request for a Fee Waiver and Properly Requested an Agreement to Pay Estimated Costs Before Conducting Additional Searches.**

**1. Plaintiff failed to meet its burden to establish entitlement to a fee waiver.**

The FOIA provides that "each agency shall promulgate regulations . . . specifying the

schedule of fees applicable to the processing of requests under this section and establishing

procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C.

§ 552(a)(4)(A)(i).  The FOIA provides that "[d]ocuments shall be furnished without charge . . . if

disclosure of the information is in the public interest because it is likely to contribute significantly

to public understanding of the operations or activities of the government and is not primarily in the

commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  Pursuant to these provisions,

the Bureau of Customs and Border Protection, Department of Homeland Security, has promulgated

guidelines for determining when fees should be waived.[3]

   The regulations provide that waiver or reduction of fees is determined on a case by case

basis by the Customs officer who determines whether to release records.[4]  19 C.F.R. § 103.10.  The

Customs officer may waive or reduce a fee if the officer finds that furnishing the information

primarily benefits the general public.  Id.   In determining the public interest aspect of the fee waiver

issue, the agency considers four factors in determining whether the requested information is

sufficiently likely to contribute significantly to the public understanding of the government.  See,

e.g., Judicial Watch v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003); Carney, 19 F.3d at 814.

Specifically, the agency must consider whether (1) the subject of the requested records concerns the

operations or activities of the United States government; (2) disclosure is likely to contribute to an

---

[3]  The statute and the regulations compiled by the agency must both be taken into consideration when a fee waiver denial is being adjudicated.  See D.C. Technical Assistance Org. v. HUD, 85 F.Supp.2d 46, 48 (D.D.C. 2000); Campbell, 164 F.3d 20, 35 (D.C. Cir. 1998); Samuel Gruber Education Project v. U.S. Department of Justice, 24 F.Supp.2d 1, 10 (D.D.C. 1998).

[4]  Judicial review of agency fee waiver denials is de novo, but is limited to the administrative record before the agency.  See 5 U.S.C. § 552(a)(4)(A)(vii); see also Judicial Watch v. Rossotti, 326 F.3d 1309, 1311 (D.C. Cir. 2003).

understanding of these operations or activities; (3) disclosure will contribute to the understanding of the public at large; and (4) disclosure is likely to contribute significantly to the public understanding of government operations or activities. Id. Under the FOIA, the plaintiff bears the burden of specifically identifying the public interest to be served by the requested disclosure. NTEU v. Griffin, 811 F.2d 644, 648 (D.C. Cir. 1987).

In this case, Plaintiff failed to meet its burden to establish entitlement to a fee waiver. See id.; see also Larson v. C.I.A, 843 F.2d 1481, 1483 (D.C. Cir. 1988); Durham v. U.S. Department of Justice, 829 F.Supp. 428, 434 (D.D.C. 1993). In rendering its determination on Plaintiff's fee waiver request, Defendant took into consideration all of the factors which apply to the public interest prong of the fee waiver analysis. See Decl. ¶ 9 and Exh. B. Defendant determined, however, that Plaintiff failed to provide reasonable specificity as to how the information would contribute significantly to the public understanding of the operations or activities of the government. See id.; see also Judicial Watch, 326 F.3d at 1312 (reiterating that requests for fee waivers "must be made with reasonable specificity . . . and based on more than conclusory allegations"). Plaintiff's request stated that the requested information would likely assist NTEU in serving its bargaining unit employees. Decl., Exh. A. Yet, Plaintiff did not identify specifically how disclosure of the information would contribute to the understanding of the public at large or how its disclosure would likely to contribute significantly to the public understanding of government operations or activities. See Judicial Watch, 326 F.3d at 1312; Carney, 19 F.3d at 814. Moreover, Plaintiff provided only one conclusive sentence that a waiver should be granted because the request was not in NTEU's commercial interest. Accordingly, Defendant properly denied Plaintiff's request for a waiver of all costs. Id.

**2. Defendant properly requested an agreement to pay estimated costs before conducting additional searches.**

Under 19 C.F.R. § 103.10(e), when the fees for processing the request are estimated to exceed the limit set by the requester, and there is no decision to waive or reduce the fees, the appropriate Customs officer must inform the requester of the estimated costs and extend an offer to the requester to confer with Customs personnel in an attempt to reformulate the request in a manner which will reduce the fee and still meet the needs of the requester. The request is suspended until it is reformulated in a manner to reduce the cost or until the requester pays or agrees to pay the estimated cost. 19 C.F.R. § 103.10(e); 5 U.S.C. §552(a)(4)(A)(v). A requester's obligation to comply with the agency's fee requirements does not cease after litigation has been initiated under the FOIA. See, e.g., Trueblood v. U.S. Dept. of Treasury, 943 F. Supp. at 68 (failure to pay fees is a jurisdictional defense that can be raised at any time); see also Pollack v. Department of Justice, 49 F.3d 115, 117, 119-20 (4th Cir. 1995) ("we affirm the district court's judgment [for DOJ] because Pollack refused to pay the required fees for search and duplicating costs or to obtain a waiver of that requirement").

In this case, Defendant estimated that a search for information responsive to item (1) of Plaintiff's request would require a search of over 300 ports and 20 Director of Field Operations offices. See Decl., Exh. B. Defendant informed Plaintiff that such a broad search would clearly exceed the $100 fee authorization provided in its request. Moreover, with regard to item (3) of Plaintiff's request, Defendant estimated that any additional searches and associated processing would require approximately six hours of work by a GS-14 systems manager, costing between $269 and $351. Decl., Exh. C. Therefore, prior to conducting any additional searches, Defendant

properly requested a written agreement to pay the estimated costs. See Decl., Exh. B and C; see also 19 C.F.R. § 103.10(e); 5 U.S.C. §552(a)(4)(A)(v). Alternatively, Defendant properly informed Plaintiff that it could reformulate its requests in order to narrow the scope of the proposed search and therefore limit costs. Id.

Plaintiffs have altogether failed to respond to Defendant's March 15 and April 2, 2007 letters. See Decl. ¶¶ 12, 17. Accordingly, it has failed to exhaust its administrative remedies. See, e.g., Maydak v. U.S. Dept. of Justice, 254 F.Supp.2d 23, 50 (D.D.C. 2003) ("The payment or waiver of fees or an administrative appeal from the denial of a fee waiver request is a jurisdictional prerequisite to bringing suit on a FOIA claim in the district court."). When a requester neither commits to pay the fees nor makes advance payment of fees as required by the agency's fee regulations, the agency may properly close the request. 5 U.S.C. § 552(a)(3)(B); see also Judicial Watch v. United States Dept. of Justice, No. 99-1883, slip op. at 16 (D.D.C. Sept. 11, 2003). Further response from the requester is required to inform the agency whether to proceed. Id.; see also Casad v. HHS, No. 01-1911, 2003 U.S. Dist. LEXIS 13007, at **16-17 (D.D.C. June 22, 2003). Accordingly, because Defendant has not received any response from Plaintiff – either payment of fees or an agreement to pay fees – Defendant may properly consider plaintiff's FOIA request constructively abandoned.

**CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's complaint, or in the alternative, grant summary judgment for Defendant. See Fed. R. Civ. P. 12(b), 56(c).

Dated: May 4, 2007

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7220

**CERTIFICATE OF SERVICE**

______I certify that the foregoing **Motion to Dismiss, or in the alternative, Motion for Summary Judgment** was served upon plaintiff pursuant to the Court's electronic filing system, addressed to:

GREGORY O'DUDEN
General Counsel
National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20006

on this 4th day of May, 2007.

____________________________________

MEGAN L. ROSE
Assistant United States Attorney
Judiciary Center Building - Civil Division
555 4th Street, NW
Washington, D.C. 20530

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION<br>1750 H Street, N.W.,<br>Washington, D.C. 20006<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY UNITED STATES CUSTOMS & BORDER PROTECTION FREEDOM OF INFORMATION OFFICE<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229<br><br>Defendant. | ) | Civil Action No. 06-1812 (JR) |

**DECLARATION OF DIANE S. SHEPHERD**

I, Diane S. Shepherd, do state the following, based on my knowledge and/or understanding:

1. I am the Director, Employee Relations Policy, within the Labor and Employee Relations division (LER) of the Office of Human Resources Management (HRM), U.S. Customs and Border Protection (CBP or the Agency). My duties include developing agency-wide policies in the employee relations area. I have served in this position since October 2002.

2. My office is responsible for the development and management of the CBP awards and recognition program.

3. On February 17, 2006, HRM received a letter from the National Treasury Employees Union (NTEU), dated January 27, 2006. See Exhibit A. In that letter NTEU made

four requests under the Freedom of Information Act and/or the Privacy Act (FOIA). The requests were for:

a. All award nomination forms and resulting award documentation, e.g. award recipients and amounts, broken down by port, for employees represented by NTEU. Such awards include performance-based cash awards, special act and on-the-spot awards, honorary and nontraditional awards, quality step increases (QSIs) and time-off awards. This request applies to awards given in or for FY 2005 performance, and we would like the information collated by employee.
b. Information which would show the total annual FY 2004 and separately 2005 salary for CBP nonsupervisory employees who are either in the various bargaining units or in the unit being petitioned for versus the CBP supervisory and managerial employees in those same areas for each of those two years. Additionally, we want the total amount of award money given to each of those two groups for each of those two years by type of award, e.g., spot award, QSI, sustained superior performance, special act, etc. Where possible we would like the above data sorted by current bargaining unit, e.g., NTEU, AFGE, NAAE, unit status pending, etc.
c. Information which would show CBP's distribution of all performance-based incentive awards and QSIs with regard to race, sex, gender, age, national origin, and disability for all CBP employees. The data would only cover FY 2005, and it would be broken out by unit versus nonunit categories as described in #2 above.
d. Any analyses done of the awards program for FY 2005 or even segments of it.

4. Because the Employee Relations Policy division is responsible for the implementation of the Agency's awards and recognition program, the letter was forwarded to my office. At that time, I was on a leave of absence from my position, and did not return until late March 2006. I was unaware that this FOIA request had not been responded to until early summer of 2006. If any of the requested records exist, they would be available to this division.

5. The Personnel Systems Group within the Office of Human Resources Management compiled the information in item (2) from the Personnel Action History database maintained by the U.S. Department of Agriculture, the organization who processes all personnel actions for CBP. Within CBP, the Office of Human Resources Management is the sole repository of these types of records.

6. On March 15, 2007, we responded to NTEU's letter. See Exhibit B. We provided NTEU with 4 pages in response to items (2) and (4): CBP Fiscal Year 2004 and 2005 Awards Distribution Comparison, and Customs and Border Protection Full-Time Permanent Only Salary for Supervisors and Non Supervisors by Fiscal Year.[1] In searching for the records in response to Request Numbers Two and Four, a

[1] I have been informed that NTEU is satisfied with our response to its request in items (2) and (4).

representative from LER identified the specific Nature of Action codes assigned to the various types of awards actions. He then contacted the Personnel Systems Group (PSG) within the Office of Human Resources Management and requested that they run a report on those specific Nature of Actions that were effected during the time period encompassed by the request. PSG receives a bi-weekly download from the Personnel Action History database maintained by the U.S. Department of Agriculture, the organization who processes all personnel and pay actions, including awards actions, for CBP. From those bi-weekly downloads, PSG personnel compiled the information contained in item (2), and provided it to LER in an Excel spreadsheet, which took approximately 1 hour. LER personnel then organized the data in the spreadsheet to address the specifics of the request, which took approximately 4 hours. PSG also provided the salary information portion of the Agency's response from the same source, the Personnel Action History database, but provided the totals requested, instead of a spreadsheet of data. These documents were provided at no charge.

7. The March 15, 2007 letter stated that the agency does not create or maintain documents that would provide information responsive to item (3) of Plaintiff's request. See Exhibit B. Additionally, the letter stated that there may be documents responsive to item (1) in the Agency's control. A search, however, would require work in hundreds of offices throughout the nation. Therefore, we requested that if Plaintiff wanted the Agency to proceed with the search, Plaintiff must provide a written agreement to pay such processing costs as may become associated its request, or detailing the maximum amount of fees you are willing to pay, as per 19 Code of Federal Regulations 103.10(e).[2] We also informed Plaintiff that it could reformulate its request in item (1) in order to narrow the scope of the proposed search and therefore limit costs. Similarly, if Plaintiff chose to pursue this course, this Office required a written agreement detailing the maximum amount of fees Plaintiff was willing to pay. See Exhibit B.

8. The agency further informed NTEU that even if it agreed to pay additional search fees, we anticipated that any discovered records would likely be withheld or significantly redacted because their release would likely threaten the privacy and safety of CBP employees, and the security of CBP operations.

9. The agency's March 15, 2007 letter also informed NTEU that its request for a waiver of all costs was denied. See Exhibit B. Under the agency's regulations, waiver of fees is determined on a case by case basis by the Customs officer who determines whether to release records. 19 C.F.R. § 103.10. In this case, the agency considered whether (1) the subject of the requested records concerns the operations or activities of the United States government; (2) disclosure is likely to contribute to an understanding of these operations or activities; (3) disclosure will contribute to the understanding of the public at large; and (4) disclosure is likely to contribute significantly to the public understanding of government operations or activities.

[2] Although the letter incorrectly cited 31 C.F.R. § 1.7(e), DHS's fee waiver provision can be found at 19 C.F.R. § 103.10.

Based upon NTEU's request, the agency determined that NTEU failed to provide reasonable specificity as to how the information sought would contribute significantly to the public understanding of the operations or activities of the government. See Exhibit B.

10. Upon further litigation review, our office determined that the Agency controlled additional documents responsive to Request Number Three. I was informed that the Agency's EEO office was in possession of documents that had been prepared in compliance with Equal Employment Opportunity Commission reporting rules, and were largely responsive to Plaintiff's request in item (3).

11. On April 2, 2007, we sent NTEU an addendum to our March 15 response. With that letter we provided two additional documents at no charge: Tables A13 and B13 from the Agency's fiscal year 2005 report to the EEOC under Management Directive 715. See Exhibit C. The letter further stated that there may be additional information in the Agency's control that is responsive to Request Number Three. However, again, because we estimated that search and processing fees for this potentially responsive information would exceed the $100 fee authorization in the original request, we requested that Plaintiff provide us with a written agreement to pay such processing costs as may become associated its request, or that Plaintiff inform us as to the maximum amount of fees it was willing to pay, as per 19 Code of Federal Regulations 103.10(e). Alternatively, we again informed Plaintiff that it could reformulate its request in item (3) in order to narrow the scope of the proposed search and therefore limit costs. See Exhibit C.

12. As noted above, we have notified NTEU that any additional records searches for NTEU's Requests Number One and Number Three would require a written agreement to pay search fees related to its requests. To date, NTEU has not provided any such agreement, nor has it indicated an intention to do so. Neither has NTEU indicated that it wishes to narrow the scope of its requests in order to reduce associated costs. Therefore we believe that our prior responses are sufficient, and consider this request resolved.

13. Regardless, the remaining paragraphs of this declaration address each of NTEU's requests: **Request Number One:** Even with a full search cost authorization, we anticipate that this information would be withheld or redacted almost completely, based on 5 U.S.C. §§ 552(b)(6) and (b)(7)(c), and § 552(b)(2).

    a. Sections (b)(6) and (b)(7)(c) protect the personal privacy of individuals named in government documents. Section (b)(7)(c) in particular protects, among other information, the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment or threats in their private life, or from being targets for corruption, due to the conduct of their official duties.

CBP's employees hold sensitive homeland security positions in a law enforcement agency. NTEU's request would not only reveal the names of these employees, but their specific duty stations. Even releasing a comprehensive list of names would be an unwarranted invasion into the personal privacy of these employees, and could make them into targets. Publicizing employee's names could lead to harassment from a denied importer or threats from criminals, or even make them targets for corruption efforts by criminals or terrorists attempting to bring drugs or weapons into the country. Information pinpointing the location of these employees would exacerbate the dangers of releasing their personal information.

I anticipate that even after an extensive search for responsive documents, it is likely that there would be insufficient public interest in the disclosure of this information to outweigh the privacy and safety concerns of our employees. The only public benefit suggested by NTEU's request is that the information would assist in determining whether CBP is in compliance with executive branch guidelines that require awards programs to be "fair, credible, and transparent." While this is a non-trivial concern, it can be addressed in better ways than the release of the names and locations of employees in sensitive homeland security positions.

b. 5 U.S.C. §552(b)(2) allows the Agency to withhold information related solely to internal personnel rules and practices. The scope of NTEU's request would allow individuals to extrapolate comparative port staffing numbers, which is highly sensitive information. Decisions about these staffing levels are a purely internal personnel matter with significant homeland security repercussions. This information could be used to target ports for criminal or terrorist activity, potentially endangering both individual employees and the mission of the Agency.

14. **Request Number Two:** CBP provided four pages of information in response to this request; these are all the responsive documents discovered in our search, and no information was redacted from those documents. These documents were provided at no charge.

15. **Request Number Three:** CBP provided six pages of information in response to this request; these are all the responsive documents discovered in our search, and no information was redacted from those documents. These documents were provided at no charge.

16. **Request Number Four:** The documents provided in response to request two are also responsive to this request. No other responsive documents were discovered in our search.

17. No information has been improperly withheld from disclosure. All information responsive to NTEU's requests that has been discovered has been released in full

with no redactions. NTEU has not agreed to pay fees associated with any additional searches. Therefore, we have not conducted any additional searches and have not withheld information pursuant to a FOIA exemption.

I certify that the foregoing is true, complete, and accurate to the best of my knowledge and belief, and is submitted under the pains and penalties of perjury.

FURTHER DECLARANT SAYETH NOT.

Diane S. Shepherd
Director, Employee Relations Policy
Human Resources Management
U.S. Customs and Border Protection

January 27, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**

Freedom of Information Act Officer
Disclosure Law Branch
Office of Regulations and Rulings
Bureau of Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

RE: Freedom of Information Act Request

Dear Sir/Madam:

Pursuant to the Freedom of Information Act (FOIA or Act), 5 U.S.C. 552 (as amended), the National Treasury Employees Union (NTEU) hereby requests the following information concerning Customs and Border Protection's (CBP) implementation of its awards and recognition program for fiscal year 2005:

1. All award nomination forms and resulting award documentation, e.g., award recipients and amounts, broken down by port, for employees represented by NTEU. Such awards include performance-based cash awards, special act and on-the-spot awards, honorary and nontraditional awards, quality step increases (QSIs) and time-off awards. This request applies to awards given in or for FY 2005 performance, and we would like the information collated by employee.

2. Information which would show the total annual FY 2004 and separately 2005 salary for CBP nonsupervisory employees who are either in the various bargaining units or in the unit being petitioned for versus the CBP supervisory and managerial employees in those same areas for each of those two years. Additionally, we want the total amount of award money given to each of those two groups for each of those two years by type of award, e.g., spot award, QSI, sustained superior performance, special act, etc. Where possible we would like the above data sorted by current bargaining unit, e.g., NTEU, AFGE, NAAE, unit status pending, etc.

3. Information which would show CBP's distribution of all performance-based incentive awards and QSIs with regard to race, sex, gender, age, national origin, and disability for all CBP employees. The data would only cover FY 2005, and it would be broken out by unit versus nonunit categories as described in #2 above.

4. Any analyses done of the awards program for FY 2005 or even segments of it.

Freedom of Information Act Officer
January 27, 2006
Page Two

In fulfilling this FOIA request, NTEU prefers that the data be furnished in electronic format.

If all or any part of this request is denied, please list the specific exemption(s) that is/are being claimed to withhold the information. In addition, should you determine that some portions of the requested material are exempt, I expect, as the Act provides, that you will provide me with the remaining nonexempt portions. In addition, please provide me an estimate of the volume of the requested information that is being withheld or denied.

According to the Act, a waiver of fees based on service in the public interest is requested because the aforementioned information will likely assist NTEU in better serving the interests of NTEU's numerous bargaining unit employees, including those in the Customs/CBP bargaining unit, by helping NTEU evaluate whether CBP is implementing its awards and recognition program in accordance with law and the parties' National Agreement. A waiver is also requested based on service in the public interest as the aforementioned information will likely assist NTEU in determining whether CBP's awards program is being implemented in a nondiscriminatory fashion with respect to race, sex, gender, age, national origin, and disability.

In addition, a waiver of fees based on service in the public interest is requested because the aforementioned information will likely assist NTEU in determining whether CBP is in compliance with *The President's Management Agenda, Department of Homeland Security (DHS)* and, in particular, the Government-Wide Initiative of Strategic Management of Human Capital. In this regard, this initiative requires DHS and, by extension, CBP to "demonstrate that it has fair, credible, and transparent…awards programs for all SES and managers and more than 60% of the workforce… (emphasis added)." Furthermore, a waiver of fees should be granted due to the fact that this request is not in NTEU's commercial interest.

In the event that the request for a waiver of all fees is denied, NTEU is willing to pay up to a maximum of one hundred U.S. dollars ($100). If you anticipate that the fees will exceed this monetary limit, please notify me.

Finally, as provided by the Act, I will expect to receive a response to this request within 20 business days. In the event that I do not receive a response within this prescribed time frame, it will be considered an exhaustion of my administrative remedy, and I shall be forced to pursue relief through traditional legal measures. If you have any questions, please contact Jonathan Levine, National Negotiator, at (202) 572-5500, ext. 7031.

Sincerely,

Colleen M. Kelley
National President

cc: Sheila Brown, Director, Labor Relations



U.S. Department of Homeland Security
Washington, DC 20229

U.S. Customs and
Border Protection

March 15, 2007

Ms. Colleen M. Kelley
National President
National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20229

Dear Ms. Kelley:

We are writing in response to your letter of January 27, 2006, requesting information under the Freedom of Information Act (FOIA) and/or the Privacy Act, 5 U.S.C. 552a. Specifically, you requested the following information regarding implementation of U.S. Customs and Border Protection's (CBP) 2005 awards and recognition program:

(1) Copy of award nomination forms and resulting award documentation, e.g., award recipients and amounts, broken down by port, for employees represented by National Treasury Employees Union (NTEU), including performance-based cash awards, special act and on-the-spot awards, honorary and nontraditional awards, quality step increases (QSI), and time-off awards, and collated by employee;

(2) Information which shows the total annual Fiscal Year (FY) 2004, and separately FY 2005, salary for CBP nonsupervisory employees who are either in the various bargaining units or in the unit being petitioned for versus the CBP supervisory and managerial employees in those same areas for each of those 2 years, to include the total amount of award money given to each of those two groups for each of those 2 years by type of award, e.g., spot award, QSI, sustained superior performance, special act, etc., and, when possible, the aforementioned data sorted by current bargaining unit, e.g., NTEU, American Federation of Government Employees, National Association of Agriculture Employees, unit status pending, etc.;

(3) Information that would show CBP's distribution of all performance-based incentive awards and QSIs with regard to race, sex, gender, age, national origin, and disability for all CBP employees, and this data broken down by unit versus non-unit categories as described in item (2); and

(4) Copy of any analyses done of the awards program for FY 2005, or even segments of it.

Enclosed are 4 pages in response to items (2) and (4), but the agency does not create or maintain documents that would provide information responsive to item (3) of your request. As they do not exist, none can be provided.

Regarding your request for a waiver of all costs, although the FOIA allows for providing documents without any charge, 5 U.S.C. 552(a)(4)(A)(iii), you have not adequately made a showing of the public interest in this matter. You contend that obtaining the requested information would serve the public interest by allowing NTEU, on behalf of its bargaining unit employees, to evaluate whether CBP implements its awards and recognition program lawfully, in a nondiscriminatory fashion, and in accordance with the CBP/NTEU National Agreement. You maintain that a fee waiver is also warranted by the public interest served in helping NTEU determine whether CBP has fair, credible, and transparent awards programs for all SES and managers, and more than 60 percent of the workforce, in accordance with the "Government-Wide Initiative of Strategic Management of Human Capital." Your contention does not provide reasonable specificity as to how the information will contribute significantly to the public understanding of the operations or activities of the government. See, Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 66 (D.C.Cir. 1990) ("the Army refused to waive fees because it was 'not convinced' that there was a sufficient public interest to justify a waiver", the showing of public interest for the fee waiver request was conclusory and clearly insufficient under 5 U.S.C. 552(a)(4)(A)(iii)); and, Casad v. HHS, No. 01-1911, 2003 U.S.Dist. LEXIS 13007, at *20 (D.D.C. June 20, 2003) (emphasizing that the requester bears the burden of justifying entitlement to the waiver of all or part of the assessed fee). Accordingly, your request for a fee waiver is denied because you have not demonstrated your entitlement to a waiver.

There may be documents responsive to item (1) in the Agency's control. A search, however, would require work in hundreds of offices throughout the nation. In the Office of Field Operations alone, for instance, this would require a records search in over 300 ports and 20 Director of Field Operations offices, and there are NTEU-represented employees in almost every component of the agency. Furthermore, we anticipate that any discovered records would be withheld in full or need to be redacted in large part due to privacy and security concerns. FOIA Exemptions (b)(6) and (b)(7)(c) protect the personal privacy of individuals named in government documents, particularly the identity of law enforcement personnel, while (b)(2) allows the agency to withhold information relating to internal personnel rules, such as comparative port staffing numbers. This search would clearly exceed the $100 fee authorization provided in your request, although at this time we are unable to estimate the total cost of such a search. If you would nonetheless like the Agency to proceed with the search, this Office requires a written agreement to pay such processing costs as may become associated with this FOIA request, or detailing the maximum amount of fees you are willing to pay, as per 31 Code of Federal Regulations 1.7(e). You may also reformulate your request in item (1) in order to narrow the scope of the proposed search and therefore limit costs. Similarly, if you choose to pursue this course, this Office will require a written agreement detailing the maximum amount of fees you are willing to pay.

If, for any reason, you wish to administratively appeal this response, you may do so, in writing, within 35 days of this notification. Please address your appeal to the

U.S. Customs and Border Protection, Freedom of Information Act Appeal, 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229. The appeal must be in writing, signed by you, and contain your address and the date of your initial request. Please note, however, that because this matter is currently in litigation, no administrative action is required on your part to pursue any dispute with the agency's response.

If we may offer further assistance, please contact Ms. Mary Seekins of my staff at (202) 344-2458. Please refer to FOIA file 2006-104.

Sincerely,

Diane S. Shepherd

Diane S. Shepherd
Director, Employee Relations Policy
Human Resources Management

Enclosures

2/9/2007

☑004

# CBP Fiscal Year 2004 and 2005
## Awards Distribution Comparison

| Cash | Number of AwardS FY 04 | Number of Awards FY 05 | Percentage (+/-) | Amount FY 04 | Amount FY 05 | Percentage (+/-) |
|---|---|---|---|---|---|---|
| NBPC BU-EE's | 2593 | 2779 | 7.17% | $2,615,924.22 | $3,419,757.49 | 30.73% |
| INS BU-EE's | 2957 | 1850 | -37.44% | $1,760,766.75 | $2,094,242.70 | 18.94% |
| INS Prof. BU-EE's | 2 | 8 | 300.00% | $4,000.00 | $10,000.00 | 150.00% |
| NTEU BU-EE's | 9605 | 5216 | -45.69% | $4,522,271.57 | $5,635,903.87 | 24.63% |
| NTEU Prof. BU-EE's | 14 | 301 | 2050.00% | $12,099.60 | $417,000.84 | 3346.40% |
| NAAE BU-EE's | 731 | 445 | -39.12% | $423,649.97 | $449,879.36 | 6.19% |
| NAPPQOSE BU-EE's | 223 | 93 | -58.30% | $111,376.34 | $65,565.30 | -41.13% |
| **Total CBP BU-EE's** | **16125** | **10692** | -33.69% | **$9,450,088.45** | **$12,092,349.56** | **27.96%** |
| Elig. B/N Rep. BU-EE's (7777) | 254 | 121 | -52.36% | $165,550.50 | $133,322.96 | -19.47% |
| Non BU-EE's (8888) | 7414 | 6500 | -12.33% | $8,688,453.77 | $10,455,113.55 | 20.33% |
| **Total CBP Non BU-EE's** | **7668** | **6621** | -13.65% | **$8,854,004.27** | **$10,588,436.51** | **19.59%** |
| **Grand Totals** | **23793** | **17313** | **-27.23%** | **$18,304,092.72** | **$22,680,786.07** | **23.91%** |

| Group Cash | Number of AwardS FY 04 | Number of Awards FY 05 | Percentage (+/-) | Amount FY 04 | Amount FY 05 | Percentage (+/-) |
|---|---|---|---|---|---|---|
| NBPC BU-EE's | 0 | 2 | 200.00% | $0.00 | $350.00 | 350.00% |
| INS BU-EE's | 9 | 32 | 255.56% | $1,550.00 | $7,800.00 | 403.23% |
| NTEU BU-EE's | 68 | 110 | 61.76% | $17,430.75 | $26,827.05 | 53.91% |
| NAAE BU-EE's | 5 | 18 | 260.00% | $500.00 | $4,700.00 | 840.00% |
| NAPPQOSE BU-EE's | 1 | 3 | 200.00% | $150.00 | $750.00 | 400.00% |
| **Total CBP BU-EE's** | **83** | **165** | **98.80%** | **$19,630.75** | **$40,427.05** | 105.94% |
| Elig. B/N Rep. BU-EE's (7777) | 4 | 20 | 400.00% | $3,000.00 | $5,000.00 | 66.67% |
| Non BU-EE's (8888) | 26 | 37 | 42.31% | $8,475.25 | $10,550.00 | 24.48% |
| **Total CBP Non BU-EE's** | **30** | **57** | **90.00%** | **$11,475.25** | **$15,550.00** | 35.51% |
| **Grand Totals** | **113** | **222** | **96.46%** | **$31,106.00** | **$55,977.05** | **79.96%** |

02/09/2007 16:06 FAX 2023442380 CBP-LER_HQ

2/9/2007

# CBP Fiscal Year 2004 and 2005
## Awards Distribution Comparison

005

| Individual Time Off Award | Number of AwardS FY 04 | Number of Awards FY 05 | Percentage (+/-) | Amount FY 04 | Amount FY 05 | Percentage (+/-) |
|---|---|---|---|---|---|---|
| NBPC BU-EE's | 150 | 441 | 194.00% | 1,712.00 | 6,159.00 | 259.75% |
| INS BU-EE's | 493 | 680 | 37.93% | 6,469.00 | 7,381.00 | 14.10% |
| INS Prof. BU-EE's | 0 | 2 | 200.00% | 0.00 | 32.00 | 320.00% |
| NTEU BU-EE's | 1885 | 2374 | 25.94% | 19,373.00 | 28,428.00 | 46.74% |
| NTEU Prof. BU-EE's | 0 | 200 | 200.00% | 0 | 2,860.00 | 200.00% |
| NAAE BU-EE's | 214 | 176 | -17.76% | 2,622.00 | 2,041.00 | -22.16% |
| NAPPQOSE BU-EE's | 50 | 26 | -48.00% | 591.00 | 238.00 | -59.73% |
| **Total CBP BU-EE's** | **2642** | **3899** | **47.58%** | **30,767.00** | **47,139.00** | **53.21%** |
| Elig. B/N Rep. BU-EE's (7777) | 20 | 42 | 110.00% | 268.00 | 584.00 | 117.91% |
| Non BU-EE's (8888) | 1453 | 2209 | 52.03% | 28,629.00 | 45,022.00 | 57.26% |
| **Total CBP Non BU-EE's** | **1473** | **2251** | **52.82%** | **28,897.00** | **45,606.00** | **57.82%** |
| **Grand Totals (Hours)** | **4115** | **6150** | **49.45%** | **59,664.00** | **92,745.00** | **55.45%** |

| Group Time Off Award | Number of AwardS FY 04 | Number of Awards FY 05 | Percentage (+/-) | Hours FY 04 | Hours FY 05 | Percentage (+/-) |
|---|---|---|---|---|---|---|
| NBPC BU-EE's | 2 | 3 | 50.00% | 48.00 | 24.00 | -50.00% |
| INS BU-EE's | 15 | 104 | 593.33% | 164.00 | 1,026.00 | 525.61% |
| NTEU BU-EE's | 111 | 388 | 249.55% | 1,226.00 | 3,452.00 | 181.57% |
| NTEU Prof. BU-EE's | 0 | 32 | 300.00% | 0.00 | 272.00 | 272.00% |
| NAAE BU-EE's | 5 | 24 | 380.00% | 56.00 | 212.00 | 278.57% |
| NAPPQOSE BU-EE's | 0 | 2 | 200.00% | 0.00 | 24.00 | 240.00% |
| **Total CBP BU-EE's** | **133** | **553** | **315.79%** | **1,494.00** | **5,010.00** | **235.34%** |
| Elig. B/N Rep. BU-EE's (7777) | 0 | 18 | 180.00% | 0.00 | 140.00 | 140.00% |
| Non BU-EE's (8888) | 51 | 148 | 190.20% | 548.00 | 1,708.00 | 211.68% |
| **Total CBP Non BU-EE's** | **51** | **166** | **225.49%** | **548.00** | **1,848.00** | **237.23%** |
| **Grand Totals (Hours)** | **184** | **719** | **290.76%** | **2,042.00** | **6,858.00** | **235.85%** |

02/09/2007 16:07 FAX 2023442380 CBP-LER_HQ

02/09/2007 16:07 FAX 2023442380 CBP-LER_HQ ☑006

2/9/2007

# CBP Fiscal Year 2004 and 2005
## Awards Distribution Comparison

| Quality Step Increase | Number of AwardS FY 04 | Number of Awards FY 05 | Percentage (+/-) | Amount FY 04 | Amount FY 05 | Percentage (+/-) |
|---|---|---|---|---|---|---|
| NBPC BU-EE's | 432 | 3 | -99.31% | N/A | N/A | N/A |
| INS BU-EE's | 0 | 1 | 100.00% | N/A | N/A | N/A |
| NTEU BU-EE's | 1 | 8 | 700.00% | N/A | N/A | N/A |
| NTEU Prof. BU-EE's | 0 | 7 | 700.00% | N/A | N/A | N/A |
| NAAE BU-EE's | 0 | 0 | 0.00% | N/A | N/A | N/A |
| NAPPQOSE BU-EE's | 0 | 0 | 0.00% | N/A | N/A | N/A |
| **Total CBP BU-EE's** | **433** | **19** | **-95.61%** | **N/A** | **N/A** | **N/A** |
| Non BU-EE's (8888) | 329 | 85 | -74.16% | N/A | N/A | N/A |
| **Total CBP Non BU-EE's** | **329** | **85** | **-74.16%** | **N/A** | **N/A** | **N/A** |
| | | | | | | |
| **Grand Totals** | **762** | **104** | **-86.35%** | **N/A** | **N/A** | **N/A** |

**Customs and Border Pretection**
**Full-time Permanent Only**
**Salary for Supervisors and Non Supervisors by Fiscal Year**

| | | Supervisors | Non-Supervisors |
|---|---|---|---|
| | | Full-time Permanent | Full-time Permanent |
| FY2004 | Total Annual Salary | $424,710,415 | $1,753,680,322 |
| FY2005 | Total Annual Salary | $462,592,343 | $1,959,788,945 |
| FY2006 | Total Annual Salary | $515,437,157 | $2,087,509,598 |

**Does NOT include Overtime or Premium Pay Paid**



U.S. Department of Homeland Security
Washington, DC 20229

U.S. Customs and
Border Protection

April 2, 2007

Ms. Colleen M. Kelley
National President
National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20229

Dear Ms. Kelley:

I am writing in further response to your letter of January 27, 2006, requesting information under the Freedom of Information Act (FOIA) and/or the Privacy Act, 5 U.S.C. 552a. Item (3) of that request asked for "Information that would show CBP's distribution of all performance-based incentive awards and QSIs with regard to race, sex, gender, age, national origin, and disability for all CBP employees, and this data broken down by unit versus non-unit categories as described in item (2)." At the time of my March 15, 2007 response, it was our understanding that no such data was gathered or maintained by the Agency. Upon further litigation review, however, we have discovered that much of the requested data may be in the control of the Agency.

To the extent this data exists, it is primarily in non-compiled form in computer systems maintaining Agency personnel records. The Agency has, however, previously produced a report that is largely responsive to your request. This six-page report provides the distribution of cash awards and Quality Step Increases for Fiscal Year 2005, broken down by Race/Ethnicity, Sex, and Disability Status (with additional detail provided for certain disability categories). Therefore, we are releasing these documents to you at no charge.

As noted, there may be additional information responsive to item (3) in the Agency's control. We estimate that a search for all responsive information in the agency's possession, and the associated processing of such information, would take roughly six hours of work by a GS-14 systems manager. This would cost between $269 and $351, exceeding the $100 fee authorization provided in your request. As noted in our earlier letter, you have not shown that you are entitled to a public interest fee waiver in this matter. Therefore, the Agency declines to waive these anticipated fees.

If you would nonetheless like the Agency to proceed with the search, this Office requires a written agreement to pay such processing costs as may become associated with this FOIA request, or detailing the maximum amount of fees you

are willing to pay, as per 31 Code of Federal Regulations 1.7(e). You may also reformulate your request in item (3) in order to narrow the scope of the proposed search and therefore limit costs. Similarly, if you choose to pursue this course, this Office will require a written agreement detailing the maximum amount of fees you are willing to pay.

If we may offer further assistance, please contact Ms. Sandra Arch of my staff at (202) 863-6128. Please refer to FOIA file 2006-104.

Sincerely,

Sharon C. Snellings

for Diane S. Shepherd
Director, Employee Relations Policy
Human Resources Management

Enclosures

**TABLE A13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Race/Ethnicity and Sex**

**This table is for U.S. Customs and Border Protection.**

| Recognition or Award Program, # Awards Given, Total cash | | Total Employees | | | Race/Ethnicity | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Hispanic or Latino | | Non- Hispanic or Latino | | | | | | | | | | | |
| | | | | | | | White | | Black or African American | | Asian | | Native Hawaiian or Other Pacific Islander* | | American Indian or Alaska Native | | Two or More/Other Races | |
| | | All | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female |
| Time-Off awards - 1-9 hours | | | | | | | | | | | | | | | | | | |
| Total Time-Off Awards Given | # | 2370 | 1578 | 792 | 359 | 166 | 1011 | 413 | 82 | 122 | 45 | 33 | 0 | 0 | 8 | 1 | 73 | 57 |
| | % | 100 | 66.58 | 33.41 | 15.14 | 7.00 | 42.65 | 17.42 | 3.45 | 5.14 | 1.89 | 1.39 | 0.00 | 0.00 | 0.33 | 0.04 | 3.08 | 2.40 |
| Total Hours | Hr | 17631.0 | 11799.0 | 5832.0 | 2697.0 | 1284.0 | 7594.0 | 3027.0 | 602.0 | 887.0 | 344.0 | 244.0 | 0.0 | 0.0 | 64.0 | 4.0 | 498.0 | 386.0 |
| Average Hours | Hr | 7.4 | 7.5 | 7.4 | 7.5 | 7.7 | 7.5 | 7.3 | 7.3 | 7.3 | 7.6 | 7.4 | - | - | 8.0 | 4.0 | 6.8 | 6.8 |
| Time-Off awards - 9+ hours | | | | | | | | | | | | | | | | | | |
| Total Time-Off Awards Given | # | 1305 | 863 | 442 | 129 | 73 | 668 | 263 | 37 | 72 | 16 | 19 | 0 | 0 | 4 | 0 | 9 | 15 |
| | % | 100 | 66.13 | 33.86 | 9.88 | 5.59 | 51.18 | 20.15 | 2.83 | 5.51 | 1.22 | 1.45 | 0.00 | 0.00 | 0.30 | 0.00 | 0.68 | 1.14 |
| Total Hours | Hr | 27585.0 | 18669.0 | 8916.0 | 2592.0 | 1318.0 | 14879.0 | 5654.0 | 666.0 | 1364.0 | 276.0 | 328.0 | 0.0 | 0.0 | 104.0 | 0.0 | 152.0 | 252.0 |

**TABLE A13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Race/Ethnicity and Sex**

**This table is for U.S. Customs and Border Protection.**

| Recognition or Award Program, # Awards Given, Total cash | | Total Employees | | | Race/Ethnicity | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Hispanic or Latino | | Non- Hispanic or Latino | | | | | | | | | | | |
| | | | | | | | White | | Black or African American | | Asian | | Native Hawaiian or Other Pacific Islander* | | American Indian or Alaska Native | | Two or More/Other Races | |
| | | All | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female |
| Average Hours | Hr | 21.1 | 21.6 | 20.2 | 20.1 | 18.1 | 22.3 | 21.5 | 18.0 | 18.9 | 17.3 | 17.3 | - | - | 26.0 | - | 16.9 | 16.8 |
| Cash Awards - $100-$500 | | | | | | | | | | | | | | | | | | |
| Total Cash Awards Given | # | 332 | 206 | 126 | 71 | 24 | 116 | 65 | 15 | 34 | 4 | 3 | 0 | 0 | 0 | 0 | 0 | 0 |
| | % | 100 | 62.04 | 37.95 | 21.38 | 7.22 | 34.93 | 19.57 | 4.51 | 10.24 | 1.20 | 0.90 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Amount | $ | 86,889 | 51,713 | 35,176 | 15,900 | 6,454 | 30,563 | 17,050 | 4,250 | 10,872 | 1,000 | 800 | 0 | 0 | 0 | 0 | 0 | 0 |
| Average Amount | $ | 262 | 251 | 279 | 224 | 269 | 263 | 262 | 283 | 320 | 250 | 267 | - | - | - | - | - | - |
| Cash Awards - $501+ | | | | | | | | | | | | | | | | | | |
| Total Cash Awards Given | # | 105 | 65 | 40 | 24 | 5 | 35 | 17 | 4 | 15 | 2 | 2 | 0 | 0 | 0 | 1 | 0 | 0 |
| | % | 100 | 61.90 | 38.09 | 22.85 | 4.76 | 33.33 | 16.19 | 3.80 | 14.28 | 1.90 | 1.90 | 0.00 | 0.00 | 0.00 | 0.95 | 0.00 | 0.00 |
| Total Amount | $ | 157,811 | 111,251 | 46,560 | 34,008 | 4,610 | 62,293 | 22,918 | 8,450 | 14,970 | 6,500 | 3,062 | 0 | 0 | 0 | 1,000 | 0 | 0 |

| TABLE A13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Race/Ethnicity and Sex | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| This table is for U.S. Customs and Border Protection. | | | | | | | | | | | | | | | | | |
| Recognition or Award Program, # Awards Given, Total cash | Total Employees | | | Race/Ethnicity | | | | | | | | | | | | | |
| | | | | Hispanic or Latino | | Non- Hispanic or Latino | | | | | | | | | | | |
| | | | | | | White | | Black or African American | | Asian | | Native Hawaiian or Other Pacific Islander* | | American Indian or Alaska Native | | Two or More/Other Races | |
| | All | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female | Male | Female |
| Average Amount $ | 1,503 | 1,712 | 1,164 | 1,417 | 922 | 1,780 | 1,348 | 2,113 | 998 | 3,250 | 1,531 | - | - | - | 1,000 | - | - |
| | | | | | | | | | | | | | | | | | |
| Quality Step Increases: | | | | | | | | | | | | | | | | | |
| Total QSIs Awarded # | 42 | 24 | 18 | 5 | 0 | 19 | 12 | 0 | 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| % | 100 | 57.14 | 42.85 | 11.90 | 0.00 | 45.23 | 28.57 | 0.00 | 14.28 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Benefit $ | 110,299 | 64,958 | 45,341 | 13,362 | 0 | 51,596 | 32,078 | 0 | 13,263 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Average Benefit $ | 2,626 | 2,707 | 2,519 | 2,672 | - | 2,716 | 2,673 | - | 2,211 | - | - | - | - | - | - | - | - |

*DHS does not currently collect data under this RNO category. The CLF for this category has been shifted to the Asian category.

Data Source: National Finance Center and Department of Transportation (U.S. Coast Guard and Transportation Security Administration) extracts for FY 2004.

Percentages shown in "bold" indicate that the participation rate of the respective group is below its National Civilian Labor Force comparison.

The Status for this report has been set to Permanent

The Fiscal Quarter for this report has been set to 2005 Fiscal Quarter 4

NOTE: Percentages compute across rows and NOT down columns.

Report generated on Nov 29, 2005

| TABLE B13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Disability | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| This table is for U.S. Customs and Border Protection. | | | | | | | | | | | | | | | |
| Recognition or Award Program, # Awards Given, Total cash | | TOTAL | Total by Disability Status | | | | Detail for Targeted Disabilities | | | | | | | | |
| | | | [05] No Disability | [01] Not Identified | [06-94] Disability | Targeted Disability | [16, 17] Deafness | [23, 25] Blindness | [28, 32-38] Missing Limbs | [64-68] Partial Paralysis | [71-78] Total Paralysis | [82] Convulsive Disorder | [90] Mental Retardation | [91] Mental Illness | [92] Distortion of Limb/ Spine |
| Time-Off awards - 1-9 hours | | | | | | | | | | | | | | | |
| Total Time-Off Awards Given | # | 2370 | 2294 | 13 | 63 | 8 | 1 | 0 | 0 | 0 | 0 | 3 | 2 | 2 | 0 |
| | % | 100 | 96.79 | 0.54 | 2.65 | 0.33 | 0.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.12 | 0.08 | 0.08 | 0.00 |
| Total Hours | Hr | 17631.0 | 17085.0 | 90.0 | 456.0 | 56.0 | 8.0 | 0.0 | 0.0 | 0.0 | 0.0 | 24.0 | 12.0 | 12.0 | 0.0 |
| Average Hours | Hr | 7.4 | 7.4 | 6.9 | 7.2 | 7.0 | 8.0 | - | - | - | - | 8.0 | 6.0 | 6.0 | - |
| | | | | | | | | | | | | | | | |
| Time-Off awards - 9+ hours | | | | | | | | | | | | | | | |
| Total Time-Off Awards Given | # | 1305 | 1253 | 14 | 38 | 8 | 1 | 0 | 1 | 2 | 0 | 2 | 2 | 0 | 0 |
| | % | 100 | 96.01 | 1.07 | 2.91 | 0.61 | 0.07 | 0.00 | 0.07 | 0.15 | 0.00 | 0.15 | 0.15 | 0.00 | 0.00 |
| Total Hours | Hr | 27585.0 | 26456.0 | 352.0 | 777.0 | 152.0 | 16.0 | 0.0 | 24.0 | 40.0 | 0.0 | 40.0 | 32.0 | 0.0 | 0.0 |
| Average Hours | Hr | 21.1 | 21.1 | 25.1 | 20.4 | 19.0 | 16.0 | - | 24.0 | 20.0 | - | 20.0 | 16.0 | - | - |

**TABLE B13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Disability**

**This table is for U.S. Customs and Border Protection.**

| Recognition or Award Program, # Awards Given, Total cash | | TOTAL | Total by Disability Status | | | | Detail for Targeted Disabilities | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | [05] No Disability | [01] Not Identified | [06-94] Disability | Targeted Disability | [16, 17] Deafness | [23, 25] Blindness | [28, 32-38] Missing Limbs | [64-68] Partial Paralysis | [71-78] Total Paralysis | [82] Convulsive Disorder | [90] Mental Retard-ation | [91] Mental Illness | [92] Distortion of Limb/ Spine |
| Cash Awards - $100-$500 | | | | | | | | | | | | | | | |
| Total Cash Awards Given | # | 332 | 323 | 1 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | % | 100 | 97.28 | 0.30 | 2.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Amount | $ | 86,889 | 84,289 | 250 | 2,350 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Average Amount | $ | 262 | 261 | 250 | 294 | - | - | - | - | - | - | - | - | - | - |
| Cash Awards - $501+ | | | | | | | | | | | | | | | |
| Total Cash Awards Given | # | 105 | 101 | 1 | 3 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| | % | 100 | 96.19 | 0.95 | 2.85 | 0.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.95 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Amount | $ | 157,811 | 152,021 | 2,000 | 3,790 | 970 | 0 | 0 | 0 | 0 | 970 | 0 | 0 | 0 | 0 |
| Average Amount | $ | 1,503 | 1,505 | 2,000 | 1,263 | 970 | - | - | - | - | 970 | - | - | - | - |

| TABLE B13: EMPLOYEE RECOGNITION AND AWARDS - Distribution by Disability | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| This table is for U.S. Customs and Border Protection. | | | | | | | | | | | | | | |
| Recognition or Award Program, # Awards Given, Total cash | TOTAL | Total by Disability Status | | | | Detail for Targeted Disabilities | | | | | | | | |
| | | [05] No Disability | [01] Not Identified | [06-94] Disability | Targeted Disability | [16, 17] Deafness | [23, 25] Blindness | [28, 32-38] Missing Limbs | [64-68] Partial Paralysis | [71-78] Total Paralysis | [82] Convulsive Disorder | [90] Mental Retard-ation | [91] Mental Illness | [92] Distortion of Limb/ Spine |
| Quality Step Increases: | | | | | | | | | | | | | | |
| Total QSIs Awarded # | 42 | 42 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| % | 100 | 100 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Benefit $ | 110,299 | 110,299 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Average Benefit $ | 2,626 | 2,626 | - | - | - | - | - | - | - | - | - | - | - | - |

Data Source: National Finance Center and Department of Transportation (U.S. Coast Guard and Transportation Security Administration) extracts for FY 2004.

Percentages shown in "bold" indicate that the participation rate of the respective group is below its National Civilian Labor Force comparison.

The Status for this report has been set to Permanent

The Fiscal Quarter for this report has been set to 2005 Fiscal Quarter 4

NOTE: Percentages compute across rows and NOT down columns.

Report generated on Nov 29, 2005

Page 1 of 1

**Rose, Megan (USADC)**

**From:** Julie Wilson [julie.wilson@NTEU.ORG]
**Sent:** Friday, March 30, 2007 9:43 AM
**To:** Rose, Megan (USADC)
**Cc:** Pat Wynns
**Subject:** NTEU v. CBP (FOIA)

Megan:

This email is to confirm that the agency's response to parts (2) and (4) of NTEU's January 27, 2006 FOIA request is sufficient.

Please give me a call if you have any questions.

Julie
Julie M. Wilson
Assistant Counsel
Office of General Counsel
National Treasury Employees Union
1750 H Street, NW
Washington, DC 20006
202-572-5500 ext. 7090

Def. EXHIBIT
2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, N.W.,
Washington, D.C. 20006

Plaintiff,

v. Civil Action No. 06-1812 (JR)

DEPARTMENT OF HOMELAND SECURITY UNITED STATES CUSTOMS & BORDER PROTECTION FREEDOM OF INFORMATION OFFICE
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229

Defendant.

**ORDER**

This matter having come before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, the memoranda in support and opposition, and the entire record in this case, it is this ________ day of ___________ hereby

ORDERED that Defendant's Motion To Dismiss is hereby GRANTED; and it is

FURTHER ORDERED that Plaintiff's claims are hereby DISMISSED in their entirety, with prejudice.

___________________________

United States District Judge